IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MANUEL LARA,

        Plaintiff,                      No. 2:07-cv-2523 MCE JFM (PC)

    vs.

DR. V. DUC, et al.,

        Defendants.             FINDINGS AND RECOMMENDATIONS

                             /

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  This matter is before the court on defendants' motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure.  Defendants contend that plaintiff failed to exhaust administrative remedies prior to suit as to both defendants, and that plaintiff has failed to state a claim upon which relief may be granted as to defendant Duc.

ALLEGATIONS OF THE COMPLAINT[1]

        Plaintiff's complaint contains the following allegations.  On or about October 26, 2005, plaintiff was diagnosed with a detached retina in his right eye.  Dr. V. Duc sent plaintiff to the U.C. Davis Medical Center for an emergency appointment to see an Opthalmologist.  Dr. Susanna Parks scheduled plaintiff for emergency surgery the next day to repair the detached retina.  Dr. Parks explained that once the blood was removed from the right eye and replaced

---

[1] This action is proceeding on plaintiff's November 26, 2007 complaint on claims against defendants Dr. V. Duc and Correctional Officer Lampkin.

1

1  with a clear liquid, and the retina re-attached, plaintiff would be able to see clearer than before
2  the retina detached.  Dr. Parks also explained that plaintiff would need to return once the eye
3  healed from the surgery so she could install plates in his right eye to eliminate the double vision
4  he would sustain due to the surgery.  She scheduled follow-up appointments for October 28,
5  2005, November 4, 2005, and another one for three to four weeks later, at which time she would
6  determine when to schedule plaintiff for the second surgery to install plates.

7         When plaintiff was returned to prison, he asked to be placed in the infirmary
8  because he was still groggy from the anesthesia, and medical staff could monitor his condition
9  and dispense his pain medications.  However, the infirmary was full.  The transport officer took
10  plaintiff to the C-Yard medical office where a nurse took plaintiff's vitals, but plaintiff was then
11  delivered to his cell.  The transport officer also lost plaintiff's medication prescription from Dr.
12  Parks.

13         Plaintiff went for his follow-up appointment on November 4, 2005, and Dr. Parks
14  took the eye patch off and was pleased to report positive progress in healing and noted his vision
15  in his right eye was saved.  Plaintiff was to return in three to four weeks for the follow-up surgery
16  to implant the plates to correct double vision.

17         However, before that could happen, defendant Lampkin came to plaintiff's cell
18  and informed plaintiff to start packing, he was being transferred to Calipatria State Prison.
19  Plaintiff told defendant Lampkin there had been a mistake as he should not be transferred in his
20  condition and asked him to contact Dr. Duc.  Officer Lampkin ignored plaintiff's plea and an
21  accompanying officer informed plaintiff if he wanted to stay, "to board up," which would result
22  in the forcible removal of plaintiff from his cell by tear gas and billy clubs.

23         Plaintiff asked the Medical Technical Assistant to contact Dr. Duc to stop the
24  transfer.  When plaintiff arrived at receiving and release (R&R) he asked the correctional officer
25  to contact Dr. Duc about his medical condition.  Plaintiff was transferred on November 20, 2005.
26  /////

1  Plaintiff avers that Dr. Duc should have placed a medical hold on plaintiff until
2  treatment for his detached retina was completed.  In addition, plaintiff contends he should not
3  have been transferred without his medical chart or list of medications and his medication.
4  Although defendant Lampkin packed all of plaintiff's medications and eye patches, he did not
5  put them on the transferring bus, and failed to contact Dr. Duc to ensure plaintiff's medical
6  condition would permit him to travel safely.  (Complaint at 9.)

7  Plaintiff states that as a result of the deliberate indifference of defendant Lampkin
8  and Dr. Duc, plaintiff is blind in his right eye, has had four additional surgeries to re-attach his
9  right retina and try to restore his eyesight, and suffers constant pain with headaches.

10  "Section 1997e(a) of Title 42 of the United States Code provides:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

14  This exhaustion requirement is mandatory.  Booth v. Churner, 532 U.S. 731, 741 (2001)."
15  McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. Dec. 5, 2002).  Exhaustion must precede the
16  filing of the complaint; compliance with the statute is not achieved by satisfying the exhaustion
17  requirement during the course of an action.  Id. at 1200.  Claims dismissed for failure to exhaust
18  administrative remedies should be dismissed without prejudice.  Id.

19  The Supreme Court has addressed the exhaustion requirement in Jones v. Bock,
20  ___ U.S. ___, 127 S.Ct. 910 (2007), and held: (1) prisoners are not required to specially plead or
21  demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense
22  which must be pleaded and proved by the defendants; (2) an individual named as a defendant
23  does not necessarily need to be named in the grievance process for exhaustion to be considered
24  adequate because the applicable procedural rules that a prisoner must follow are defined by the
25  particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of
26  the entire complaint if only some, but not all, claims are unexhausted.  The Supreme Court also

held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules "so that the agency addresses the issues on the merits." Id., 548 U.S. 81, 126 S.Ct. 2378, 2385-88 (2006). Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 2386. Partial compliance is not enough. See id.

> California's Department of Corrections provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment. Within fifteen working days of "the event or decision being appealed," the inmate must ordinarily file an "informal" appeal, through which "the appellant and staff involved in the action or decision attempt to resolve the grievance informally." Cal.Code Regs., tit. 15, §§ 3084.5(a), 3084.6(c). [Footnote omitted.] If the issue is not resolved during the informal appeal, the grievant next proceeds to the first formal appeal level, usually conducted by the prison's Appeals Coordinator. Id. §§ 3084.5(b), 3084.6(c). Next are the second level, providing review by the institution's head or a regional parole administrator, and the third level, in which review is conducted by a designee of the Director of the Department of Corrections. [Footnote omitted.] Id. § 3084.5(e)(1)-(2).

Brown v. Valoff, 422 F.3d 926, 929-30 (9th Cir. 2005.) Department regulations require that

> (1) Informal level responses shall be completed within ten working days.
>
> (2) First level responses shall be completed within 30 working days.
>
> (3) Second level responses shall be completed within 20 working days, or 30 working days if first level is waived pursuant to section 3084.5(a)(3).
>
> (4) Third level responses shall be completed within 60 working days.

Cal.Code Regs., tit. 15, § 3084.6(b).

Plaintiff's claim against defendant Duc is based on his assertion that defendant Duc failed to place a medical chrono in plaintiff's file to prevent his transfer until his medical problems related to his detached retina were resolved. Plaintiff's claim against defendant Lampkin is based on transferring plaintiff while he obviously suffered from a medical ailment,

4

and for packing plaintiff's medication in plaintiff's personal property, resulting in a three week delay in its receipt upon plaintiff's transfer.

In his administrative grievance No. 0602255, plaintiff explained the history surrounding his detached retina, including his scheduled surgeries, and stated that UC Davis did not release him from their care and "New Folsom should have put a medical chrono on [his] file to keep [him] from transferring to another prison while in [his] condition." (July 28, 2008 Motion, Attachment 2.) Plaintiff also complained he had been transferred despite his medical condition, including packing his medication in his personal property, "which didn't catch up to [him] for three weeks." (Id.)

Although plaintiff's grievance failed to specifically name Dr. Duc or defendant Lampkin as parties responsible for these alleged errors, this court finds that his administrative grievance was sufficient to put the prison on notice of plaintiff's claims. Jones v. Bock, 127 S.Ct. at 921, 923. Moreover, while it is true that the prison officials reviewing the grievances focused on the medical care plaintiff was provided, plaintiff continued to press his claim that his medications were not provided upon his transfer. Indeed, the director's level appeal decision found that plaintiff packed his medications with his personal property rather than hand-carrying them with him to R&R. (July 28, 2008 Motion, Attachment 2.) However, in his complaint, plaintiff avers that defendant Lampkin ordered plaintiff to "start packing his property" (id. at 7), and "packed all of [his] medication and eye patches and were not put on the transferring bus with [him]." (id. at 9.) There is no indication that defendant Lampkin directed plaintiff to hand-carry his medications or that plaintiff was aware he was allowed to hand-carry his medications to R&R for separate packaging and routing with him on the transportation bus. In his opposition, plaintiff contends defendant Lampkin "actually knew" of (1) the risk of his condition if he was transferred, (2) his recent surgery, (3) the heavy medication he was on for pain, and could see the patch on his right eye, yet did nothing to verify his request to contact Dr. V. Duc on plaintiff's

/////

5

1  "hasty departure." (Id. at 3.) Accordingly, the court will recommend that defendants' motion to
2  dismiss these claims as unexhausted be denied.

3         Defendant Duc contends that plaintiff's complaint fails to state a cognizable
4  § 1983 claim for deliberate indifference to plaintiff's serious medical needs because the CSP-
5  Sacramento medical department had no knowledge of plaintiff's follow-up appointment since it
6  had not yet received the records from UC Davis Medical Center. This defendant also contends
7  that, even if plaintiff could demonstrate Dr. Duc acted knowingly, plaintiff's claim fails because
8  the medical department's policy states a medical hold will not be placed on an inmate if a service
9  can be re-created within thirty days, and the record reflects plaintiff received the necessary
10 medical treatment for his eyes. (Motion at 11, citing Complaint, Attachment at 4.)

11        In order to state an Eighth Amendment claim, plaintiff must demonstrate he had a
12 "serious medical need" and that defendants acted with "deliberate indifference" to that need.
13 Estelle v. Gamble, 429 U.S. 97, 105 (1976). A medical need is serious if "the failure to treat a
14 prisoner's condition could result in further significant injury or the 'unnecessary and wanton
15 infliction of pain'." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992) (quoting Estelle,
16 429 U.S. at 104, 97 S.Ct. 285). Deliberate indifference is shown by evidence that a prison
17 official "knows of and disregards an excessive risk to inmate health or safety; the official must
18 both be aware of the facts from which the inference could be drawn that a substantial risk of
19 serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837
20 (1994). Mere negligence is insufficient for Eighth Amendment liability. Frost v. Agnos, 152
21 F.3d 1124, 1128 (9th Cir. 1998). "Prison officials are deliberately indifferent to a prisoner's
22 serious medical needs when they deny, delay, or intentionally interfere with medical treatment."
23 Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks
24 omitted). Mere differences of opinion between a prisoner and prison medical staff as to
25 appropriate medical care also do not give rise to a § 1983 claim. Franklin v. Oregon, 662 F.2d
26 1337, 1344 (9th Cir. 1981).

1    Plaintiff provided a copy of an administrative appeal, first level review, from C.
2 Gray, R.N., Supervising Registered Nurse II, at Calipatria State Prison. (Opp'n, Ex. B.)
3 R.N. Gray wrote:

> After reviewing the UHR and after interviewing [plaintiff], it has been determined that upon [plaintiff's] arrival at CAL on November 22, 2005, his case was immediately reviewed by M. LEVIN, MD, CMO/Health Care Manager. [Plaintiff] had undergone Retinal Surgery at University of California Davis while he was being housed at FSP in the weeks prior to his arrival at CAL. [Plaintiff] was scheduled for a Follow-Up that he could not attend because of the transfer to CAL. FSP failed to do a Medical Hold prior to transfer. The UHR did not contain any records of [plaintiff's] last eye appointment, and [plaintiff's] medications were in his Personal Property that had not arrived at CAL with the Transportation Unit. Dr. LEVIN tried to contact FSP and UCDMC to determine what medications [plaintiff] required. Since these efforts failed to produce any additional information and [plaintiff] did not know that medication he was on, Dr. LEVIN provided him with antibiotic Ophthalmic drops and oral analgesics until the Opthalmologist could see him.

13 (Id.)[2]  Plaintiff argues this document demonstrates that Dr. Levin and R.N. Gray believe a
14 medical hold should have been placed in plaintiff's file. (Opp'n. at 2.)
15    Conversely, this document supports defendant Duc's position that he was unaware
16 of any need for subsequent surgery. In the July 27, 2006 first level appeal response, Dr. Duc
17 confirmed that "the Consult Staff was lacking the Opthalmology report of November 4, 2005."
18 (Complaint, Attachment at 4.)  Indeed, plaintiff was transferred to Calipatria prior to the prison's
19 receipt of the report. (Id.)  Dr. Duc stated: "SAC's[3] medical department had no knowledge
20 regarding a pending appointment for you prior to your transfer; therefore, you were transferred."
21 (Id.)  Because the documentation provided by plaintiff in his complaint confirms that defendant
22 /////

---

[2] The acronym "CAL" stands for Calipatria State Prison and "FSP" stands for Folsom State Prison.

[3] Dr. Duc uses the acronym "SAC" for the California State Prison-Sacramento, which is located in Represa, California, sometimes referred to as "Folsom State Prison."

Duc was unaware plaintiff required follow-up surgery, his failure to place a medical hold cannot be described as deliberately indifferent.

However, plaintiff also states, for the first time, that "Dr. V. Duc disregarded my constant request to put a medical hold on plaintiff while housed at Folsom State Prison."[4] (Opp'n at 2.) Plaintiff does not include such an allegation in his complaint or in his administrative grievances; rather, all of his requests were made to correctional officers and a Medical Technical Assistant to contact Dr. Duc to stop his transfer. Plaintiff faults Dr. Duc for failing to place a medical hold in plaintiff's file.

In the first level appeal response, Dr. Duc confirmed that he saw plaintiff on November 9, 2005, for reported "slight redness of the left eye and a mild twitching of the eyelid." Dr. Duc opined that "[t]he mild twitching is a normal result of your surgery, and is temporary. Your prescription for Tylenol #3 was discontinued, and an order for Darvocet was written. (Id.)[5] This examination was after plaintiff's initial surgery on October 27, 2005 and follow-up examination on November 4, 2005, but prior to his November 20, 2005 transfer. In addition, plaintiff was seen by R.N. Aguilar on November 18, 2005 who noted plaintiff had a history of retinal detachment and complaints of headaches; plaintiff also informed her he was in pain. (Complaint, Attachment at 4-5.)

Thus, the complaint, as presently written, fails to state a cognizable claim for deliberate indifference to plaintiff's serious medical needs by Dr. Duc. But in an abundance of caution, plaintiff should be granted leave to amend. If plaintiff can demonstrate he made Dr. Duc aware of the need for subsequent surgery, plaintiff may be able to present a cognizable claim. As noted above, plaintiff must provide evidence that Dr. Duc knew of and disregarded an excessive risk to plaintiff's health; Dr. Duc must have been aware of the facts from which the inference

---

[4] This statement was not made under penalty of perjury.

[5] Although the appeal response references an attached copy of a progress note completed by Dr. Duc on November 9, 2005, that document has not been provided by either party.

could be drawn that a substantial risk of serious harm existed, and Dr. Duc must also have drawn the inference.  <u>Farmer</u>, 511 U.S. at 837.

With regard to defendant Duc's argument that plaintiff's claim hinges on a difference of opinion between plaintiff and Dr. Duc, this court disagrees.  While Dr. Duc contends plaintiff received the necessary medical treatment within thirty days of his November 20, 2005 transfer as required under his department's medical hold policy, plaintiff has provided evidence to the contrary.  Plaintiff avers he was scheduled for follow-up surgery with Dr. Parks to install plates to correct his double vision.  The follow-up care that plaintiff received within the thirty day period was an application of eye ointment and a right eye patch.  Plaintiff did not have surgery again until February 22, 2006, which was a re-attachment of the right retina.

Accordingly, this court finds that plaintiff has not failed to exhaust administrative remedies prior to suit for any of the claims raised in the complaint.  For that reason, defendants' motion to dismiss for failure to exhaust should be denied.  Because plaintiff's complaint fails to state a cognizable claim for deliberate indifference to plaintiff's serious medical needs by Dr. Duc, defendant Duc's motion to dismiss the complaint should be granted.  Fed. R. Civ. P. 12(b)(6). However, plaintiff will be granted leave to file an amended complaint if he is aware of facts supporting such a claim against Dr. Duc.  Plaintiff may, of course, opt to proceed on his original complaint as to defendant Lampkin only.

Plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete.  Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  See <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. Plaintiff may include his allegations as to defendant Lampkin.

1  However, plaintiff need not re-attach the exhibits appended to his original
2  complaint. At plaintiff's request, the court will remove the exhibits from plaintiff's original
3  complaint and append them to his amended complaint.
4  In accordance with the above, IT IS HEREBY RECOMMENDED that:
5  1. Defendants' July 28, 2008 motion to dismiss this action as unexhausted
6  (docket no. 15) be denied;
7  2. Defendants' July 28, 2008 motion to dismiss plaintiff's claims against
8  defendant Duc be granted;
9  3. The November 26, 2007 complaint be dismissed with leave to amend; and
10  4. Within thirty days from the date of an order by the district court addressing the
11  instant findings and recommendations, plaintiff shall complete the attached Notice of
12  Amendment and submit the following documents to the court:
13  a. The completed Notice of Amendment; and
14  b. An original and one copy of the Amended Complaint.
15  Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the
16  Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must
17  bear the docket number assigned this case and must be labeled "Amended Complaint"; failure to
18  file an amended complaint will result in a recommendation that this action be dismissed.
19  These findings and recommendations are submitted to the United States District
20  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty
21  days after being served with these findings and recommendations, any party may file written
22  objections with the court and serve a copy on all parties. Such a document should be captioned
23  "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that
24  /////
25  /////
26  /////

1 failure to file objections within the specified time may waive the right to appeal the District
2 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3 DATED: November 6, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

/001; lara2523.mtd

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MANUEL LARA,

        Plaintiff,                    No. 2:07-cv-2523 MCE JFM (PC)

    vs.

DR. V. DUC, et al.,                 NOTICE OF AMENDMENT

        Defendants.

_____/

        Plaintiff hereby submits the following document in compliance with the court's order filed _____:

        _____        Amended Complaint

        OR

        _____        Plaintiff opts to proceed on the original complaint as to defendant Lampkin.

DATED:

                                                              Plaintiff